**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **GABRIELA NARANJO, ET AL.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**CITY OF REDWOOD CITY, ET AL.,**<br><br>Defendants. | CASE NO. 19-cv-01549-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 11 |

Plaintiff Gabriela Naranjo, individually and as guardian ad litem for her three minor children J.B., A.B., and D.B., brings this civil rights action against defendants San Mateo County (the "County"), City of Redwood City, detective Michael Ruybal, officer Richard Santiago, special agent Amanda Meier, special agent Jeffrey Clements, special agent Michael Leishman, police chief JR Gamez, Sheriff Carlos Bolanos, and Does 1-25, pursuant to 42 U.S.C. section 1983 for violation of plaintiffs' constitutional rights. (Dkt. No. 1 ("Compl.").)[1]

Now before the Court is the County, Sheriff Bolanos, and special agents Clements and Leishman's (together, the "County Defendants") motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 11 ("Motion").) Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS IN PART** and **DENIES IN PART** County Defendants' motion.[2]

---

[1] On July 29, 2019, plaintiffs voluntarily dismissed the State of California, California Highway Patrol, and commissioner Joe Farrow from the action. (Dkt. No. 37.)

[2] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds the motion appropriate for decision without oral argument.

# I. BACKGROUND

Plaintiffs' complaint alleges as follows:

On March 28, 2019, at approximately 7:10 a.m., detective Ruybal, officer Santiago, and special agents Meier, Leishman, Clements (together, "Officer Defendants") executed a signed warrant authorizing the search of plaintiffs' home at 238 Park Street, Redwood City, California. (Compl. ¶¶ 26-27.)[3] The home is a single story. (*Id.* ¶ 28.) Ms. Naranjo lived there with her three children, also plaintiffs, as well as her boyfriend Jesus Bustos. (*Id.*) Ms. Naranjo rented a room in the home to an individual named Marcellino Barragan. (*Id.*)

At the time the search warrant was executed, plaintiffs were present in the home. (*Id.* ¶ 29.) Officer Defendants entered the residence without knocking and with their guns drawn. (*Id.* ¶ 31.) J.B. (15 years old) was in the living room of the home, with the family dog, getting ready for school. (*Id.* ¶¶ 5, 32.) Officer Defendants pointed their guns at J.B. and ordered him to control the dog or the dog would be shot. (*Id.*). J.B. complied with the order. (*Id.*)

Officer Defendants also entered the bathroom where Ms. Naranjo was taking a shower. (*Id.* ¶¶ 33-34.)[4] They pointed a gun at Ms. Naranjo and ordered her not to move. (*Id.* ¶ 34.) Ms. Naranjo was naked and asked an officer if she could retrieve a towel to cover herself because she was wet and cold. (*Id.*) She was told not to move until a female officer arrived. (*Id.*) Ms. Naranjo remained in the shower, with an officer pointing his gun at her. (*Id.*) After a few minutes, special agent Meier, a female officer, arrived and ordered Ms. Naranjo to get out of the shower. (*Id.*) Mr. Naranjo complied with the order. (*Id.*) Special agent Meier then handcuffed Ms. Naranjo, placed a bathrobe over her shoulders, and led her to the front yard of the home. (*Id.* ¶¶ 35-39.) Ms. Naranjo's repeated requests for clothing were denied, and her bathrobe remained

---

[3] Paragraphs 25 and 26 of the complaint allege that the search warrant was "authored" on March 27, *2017* and executed on March 28, *2019*. (Compl. ¶¶ 26-27.) The Court understands this to be a typographical error, however, plaintiffs should clarify this point as needed in any amended complaint.

[4] Plaintiffs claim that Officer Defendants entered the bathroom while Ms. Naranjo was in the shower. (Compl. ¶ 34.) Given that special agent Meier arrived several minutes later, however, it appears that only certain of Officer Defendants were initially present in the bathroom with Ms. Naranjo. (*Id.*) Plaintiffs should clarify this point in any amended complaint.

2

untied and open in the front, exposing Ms. Naranjo's breasts, stomach, and pubic area. (*Id*. ¶¶ 37-38.)

Twenty minutes later, after repeatedly asking about her children, Ms. Naranjo was escorted back inside the home and into the master bedroom. (*Id*. ¶ 40.) She was then uncuffed and told to get dressed. (*Id*.) Once dressed, she was told to wake up her two other children and take them outside. (*Id*.) Thereafter, Officer Defendants placed plaintiffs in a van. (*Id*. ¶ 41.) Despite the cold temperature in the van, plaintiffs were not permitted to retrieve shoes, sweaters, or blankets. (*Id*.) Ms. Naranjo asked whether D.B. (10 years old) and A.B. (6 years old) could use the bathroom and was told they needed to wait, which they did for over 30 minutes. (*Id*. ¶¶ 6, 7, 42.)

Officer Defendants then escorted plaintiffs back inside the home. (*Id*. ¶ 43.) They were placed in the living room. (*Id*.) When A.B. attempted to enter the kitchen to get food, Officer Defendants yelled at him to get out. (*Id*.) Officer Defendants eventually completed their search of the residence and left. (*Id*. ¶ 44.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding whether the plaintiff has stated a claim, a court must assume that plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks omitted). Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

**III. DISCUSSION**

**A. Fourth Amendment Claim**

Plaintiffs bring a single cause of action for violation of 42 U.S.C. section 1983, alleging in part that Officer Defendants violated plaintiffs' Fourth Amendment right to be free from unreasonable searches and seizures and for sufficient probable cause to exist for said searches and seizures. (Compl. ¶ 51.)[5] The instant motion is similarly short. County Defendants argue that the Fourth Amendment claim should be dismissed simply because plaintiffs' home was searched pursuant to a valid search warrant supported by probable cause. (Motion at 4.) Specifically, County Defendants aver that because the complaint alleges that "[a] search warrant was signed by [a state court judge], authorizing the search of [plaintiffs'] home," plaintiffs "ha[ve] admitted that the search of [their] home was conducted with a valid warrant." (*Id.*) Thus, County Defendants argue, plaintiffs fail to state a claim for violation of their Fourth Amendment rights.

County Defendants' argument fails to persuade. The Fourth Amendment proscribes "unreasonable searches and seizures." U.S. Const. Amend. IV. Where, as alleged here, a search is conducted pursuant to a warrant, plaintiffs bringing a Fourth Amendment claim must show "either that the warrants were invalid under the Fourth Amendment *or* that, even if valid, the warrants were executed in a manner that rendered the searches unreasonable." *United States v. Artis*, 919 F.3d 1123, 1128 (9th Cir. 2019) (emphasis supplied); *see also Tennessee v. Garner,* 471 U.S. 1, 7-8 (1985) (holding that the reasonableness of a search or seizure depends on, among other things, "*how* it is carried out") (emphasis in original). Here, plaintiffs frame their Fourth Amendment claim as challenging not the validity of the warrant but the way it was executed. (Dkt. No. 38 ("Opp.") at 5.)[6] Indeed, the complaint states that it "arises from conduct by [Officer Defendants]

---

[5] Plaintiffs advance Fourth and Fourteenth Amendment claims, as well as *Monell* claims, against various sub-groups of defendants, all under a single cause of action. (Compl. ¶¶ 46-69.) Any amended complaint should separate plaintiffs' claims and theories of liability into different causes of action.

[6] In their opposition, plaintiffs note that they "do challenge the validity of the search warrant and do not agree with the [d]efendant[s'] characterization that the search warrant was 'valid.' For purposes of this [m]otion, however, the validity of the search warrant is not the primary issue." (Opp. at 5, n.1.) As explained herein, the Court does not read the complaint as

4

during the execution of a search warrant," and nearly all of the factual allegations in the complaint center around this conduct. (Compl. ¶¶ 25, 27-45.) Accordingly, even if plaintiffs had admitted the warrant was valid, which the Court is not persuaded they have, plaintiffs allege a plausible Fourth Amendment violation based on the manner in which Officer Defendants executed the warrant. *See Pierce v. Cty. of Marin*, 291 F. Supp. 3d 982, 992 (N.D. Cal. 2018) (rejecting argument that plaintiff's detention "was pursuant to a facially valid warrant and was therefore reasonable" where complaint alleged that "defendants['] conduct *after* plaintiff's wrongful booking . . . caused the subsequent wrongful arrests and detentions").

County Defendants' motion to dismiss is therefore denied with respect to their argument that the Fourth Amendment claim should be dismissed based on the validity of the warrant.

### B. Qualified Immunity

Next, County Defendants argue that plaintiffs' Fourth Amendment claim must be dismissed on the basis of qualified immunity. (Motion at 4-6.)[7]

"The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Wood v. Moss,* 572 U.S. 744, 745 (2014) (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 735 (2011)). "Because qualified immunity is an affirmative defense from suit, not merely from liability, '[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.'" *Doe By and Through Doe v. Petaluma City School Dist.,* 54 F.3d 1447, 1449-50 (9th Cir. 1995) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)).

---

challenging the validity of the warrant, which is currently under seal. If plaintiffs wish to advance this theory, they must amend the complaint accordingly.

[7] Although the motion in one instance asserts that qualified immunity bars plaintiffs' *Fourteenth* Amendment claim (Motion at 4), the remainder of the briefing, including the cases cited by both parties, concern qualified immunity as it applies to *Fourth* Amendment claims (*see, e.g.,* Motion at 6). Accordingly, the Court focuses its analysis on determining whether plaintiffs' Fourth Amendment claim is barred by qualified immunity.

In *Saucier v. Katz,* 533 U.S. 194 (2001), the Supreme Court set forth a two-pronged approach for analyzing qualified immunity. First, the Court must determine whether the facts alleged, construed in the light most favorable to plaintiffs, establish the violation of a constitutional right. *Id.* at 201. Second, the Court decides whether the right is "clearly established" such that a reasonable government official would have known that "his conduct was unlawful in the situation he confronted." *Id.* at 202.[8] A "clearly established" constitutional right must not be stated as a general proposition, but rather, must be "particularized" to the facts of the case. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see also Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014) ("[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.").

The Court considers each prong of the qualified immunity analysis in turn.

### 1. *Violation of a Constitutional Right*

First, the Court must determine whether the facts alleged, taken in the light most favorable to plaintiffs, state a plausible claim for violation of plaintiffs' constitutional rights.

County Defendants argue plaintiffs fail to allege a constitutional violation because plaintiffs have not stated a plausible claim that (i) the search warrant was invalid or (ii) Officer Defendants used "excessive force" when executing the warrant. (Motion at 5.) With respect to the first argument, as previously explained, plaintiffs' claims are based on the manner in which the search warrant was executed, not the validity of the warrant. *See supra* Section III.A. Executing a search warrant in an unreasonable manner may violate an individual's constitutional rights. *See Artis*, 919 F.3d at 1128 (allegations that "warrants were executed in a manner that rendered the searches unreasonable" constitutes a Fourth Amendment violation); *Lee v. City of Los Angeles*, 250 F.3d 668, 683 (9th Cir. 2001) (notwithstanding the existence of a valid warrant, "a detainee has a constitutional right to be free from continued detention after it was or should have been

---

[8] In *Pearson v. Callahan*, 555 U.S. 223, 235 (2009), the Supreme Court clarified that courts may exercise discretion in deciding which of the two prongs should be addressed first.

6

known that the detainee was entitled to release") (internal quotation marks omitted); *Gant v. Cty. of Los Angeles*, 772 F.3d 608, 619 (9th Cir. 2014) ("[A] public entity can be liable under the Fourteenth Amendment for failing to institute readily available procedures for decreasing the risk of erroneous detention[.]").

County Defendants' second argument likewise fails to persuade. Although plaintiffs allege Ms. Naranjo was "assault[ed]" and "batter[ed]" (Compl. ¶ 36), the gravamen of the complaint is that Officer Defendants' alleged conduct was constitutionally unreasonable not because it involved excessive force, but because it was "unnecessarily degrading, prolonged, and an invasion of [plaintiffs'] privacy." (Opp. at 7, quoting *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994).)[9] Indeed, plaintiffs allege that Officer Defendants held Ms. Naranjo at gunpoint while "stood in the shower, wet, cold[,] and fully exposed in front of the male officer," and later forced Ms. Naranjo to stand in her front yard with her breasts, stomach, and pubic area fully exposed for approximately 20 minutes. (Compl. ¶¶ 34, 39-42.) Thus, even absent allegations of excessive

---

[9] For this reason, County Defendants' reliance on *Hansen v. Schubert*, 459 F. Supp. 2d 973 (E.D. Cal. 2006) is unavailing. County Defendants point out that in *Hansen*, officers were not entitled to qualified immunity where they "kicked the door in, dragged [plaintiff] out of bed, [] handcuffed him . . . pushed him up against his entertainment center[,] and placed a shotgun against the back of his head." (Motion at 5-6, quoting *Hansen*, 459 F. Supp. 2d at 982.) County Defendants seem to argue that plaintiffs' allegations in this action do not rise to the level of the allegations in *Hansen* with respect to excessive force, and therefore, do not establish a constitutional violation. However, as explained herein, plaintiffs allege not that they were subject to excessive force, but rather, that Officer Defendants' conduct was "unnecessarily degrading, prolonged, and an invasion of [plaintiffs'] privacy."

Moreover, other parts of *Hansen* actually lend support to plaintiffs' position that qualified immunity does not apply. Specifically, a different plaintiff in *Hansen* alleged that officers "grabbed" her, ripping her shirt so that her breast was exposed, and then would not allow her to change her shirt or cover herself for several hours. 459 F. Supp. 2d at 994-995. With respect to these allegations, the court held that defendants were not entitled to qualified immunity because "at the time of the search, the law was sufficiently clearly established to place a reasonable law officer on notice that using this type of force against an individual who was complying with a search and the failure to allow her to cover her exposed breast for several hours while she was detained is unlawful." *Id*. at 995. Here, like in *Hansen*, plaintiffs allege that Officer Defendants "grabb[ed]" Ms. Naranjo and "did not allow Ms. Naranjo to put clothing on," leaving her "fully exposed" for a significant amount of time. (*Compare* Compl. ¶¶ 36-37, *with Hansen*, 459 F. Supp. 2d at 995.) Thus, *Hansen* indicates that qualified immunity does not bar plaintiffs' claims.

7

force, the complaint contains sufficient factual allegations to show a plausible constitutional violation with respect to the manner in which the warrant was executed as to Ms. Naranjo.

Moreover, County Defendants' reliance on *Los Angeles Cty., California v. Rettele*, 550 U.S. 609 (2007) fails to persuade. In *Rettele*, officers executing a valid search warrant found two residents who were sleeping unclothed. 550 U.S. at 611. The officers ordered the residents out of bed and required them to stand for one to two minutes before they were allowed to dress. *Id*. Within a few minutes, officers realized the residents were not the suspects being sought and left the home. *Id*. In finding plaintiffs' Fourth Amendment rights were not violated, the court held that "[t]he orders by the police to the occupants . . . were permissible, and perhaps necessary, to protect the safety of the deputies." *Id*. at 614. In particular, the court found that "[b]lankets and bedding can conceal a weapon, and one of the suspects was known to own a firearm. . . . The deputies needed a moment to secure the room and ensure that other persons were not close by or did not present a danger. Deputies were not required to turn their backs to allow [the plaintiffs] to retrieve clothing or to cover themselves with the sheets." *Id*. at 614-615.

*Rettele* is easily distinguishable from the case at hand. Here, Ms. Naranjo was allegedly detained in her front yard for approximately 20 minutes, significantly longer than the *Rettele* plaintiffs. (Compl. ¶¶ 39-40.) During this time, Officer Defendants allegedly forced Ms. Naranjo to stand fully exposed in public view. (*Id*.) Further, unlike in *Rettele*, the complaint does not allege that Ms. Naranjo was covered by bedding or otherwise had access to a concealed weapon when Officer Defendants found her, such that Officer Defendants could not reasonably provide Ms. Naranjo with an opportunity to cover herself without compromising their own safety. As even the *Rettelle* court recognized, "special circumstances, or possibly a prolonged detention, might render a search unreasonable." *Rettelle*, 550 U.S. at 615 (citation omitted). Such is the case here, where Officer Defendants' alleged conduct plausibly exceeded the constitutional bounds of a reasonable search and seizure.

Thus, based on the allegations in the complaint, plaintiffs have stated a plausible claim that Officer Defendants violated plaintiffs' constitutional rights.

## 2. Violation of "Clearly Established" Law

Next, the Court must determine whether plaintiffs have met their burden of demonstrating a violation of "clearly established" law. Generally, a plaintiff satisfies this burden by showing that the case involves an "obvious" instance of constitutional misconduct or by identifying a factually analogous case that prohibits the conduct. *Sharp v. Cty. of Orange*, 871 F.3d 901, 922 (9th Cir. 2017) (citing *White*, 137 S.Ct. at 552). Here, plaintiffs argue that both principles apply. (Opp. at 8-9.)

In support of their argument that County Defendants' conduct violated "clearly established" law as set forth in a factually analogous case, plaintiffs point to *Franklin v. Foxworth*, 31 F.3d 873 (9th Cir. 1994). (*Id.* at 9.)[10] In *Franklin*, plaintiffs filed a section 1983 action alleging that the manner in which police officers executed a search warrant for plaintiffs' home violated their constitutional rights. 31 F.3d at 875. Specifically, plaintiffs alleged that during the execution of the warrant, officers entered the bedroom of one of the plaintiffs, an obviously disabled man, with their guns drawn. *Id*. The plaintiff allegedly was lying in bed wearing only a t-shirt. *Id*. The complaint alleged that officers searched the plaintiff for weapons, and finding none, handcuffed him, carried him into the living room, and placed him on a couch with his genitals exposed. *Id*. When the plaintiff allegedly complained that the handcuffs hurt his wrists and that he was cold and tired from sitting upright on the couch, he was re-cuffed in front of his body and given a blanket. *Id*. However, the plaintiff allegedly was not allowed to return to his bed for over two hours, well after officers had searched the plaintiff's bedroom and found no weapons or contraband. *Id*.

On appeal from a judgment entered in the defendants' favor, the Ninth Circuit held:

> It is clear, in light of the district court's findings of fact, that the officers executing the search warrant at the Curry-Franklin home acted unreasonably. They executed the warrant in an unreasonable manner, first by removing a gravely ill

---

[10] County Defendants assert that plaintiffs "cite no precedent establishing that [Officer Defendants]' actions toward Ms. Naranjo or her children during the service of the warrant constituted a Constitutional violation." (Reply at 2.) This assertion is demonstrably false, as plaintiffs point to *Franklin v. Foxworth*, 31 F.3d 873 (9th Cir. 1994) in support of their argument that qualified immunity does not apply. (Opp. at 9.)

9

and semi-naked man from his sickbed without providing any clothing or covering, and then by forcing him to remain sitting handcuffed in his living room for two hours rather than returning him to his bed within a reasonable time after the search of his room was completed. None of the officers had any reason to believe, on the basis of the information they had prior to the search or their observations once in the house, that Curry had committed a crime, or that he was armed. In fact, the officers were not even aware that Curry lived in the house prior to executing the warrant. It should also have been clear to them that Curry was not a gang member. Finally, it should have been obvious to the officers that Curry presented little risk of danger to them, that he presented absolutely no risk of flight, and that it was highly unlikely that he could interfere with their search in any way.

*Id*. at 876-77 (emphasis supplied).

Here, County Defendants' alleged conduct while executing the warrant plausibly violated clearly established law as set forth in *Franklin*, in that the search plausibly subjected Ms. Naranjo to "entirely unnecessary and unjustifiable degradation and suffering." *Id*. at 878.[11] In particular, the complaint alleges that Ms. Naranjo was naked in the shower when County Defendants entered her bathroom, with their guns drawn, and placed her in handcuffs. (Compl. ¶¶ 33-35.) Although a bathrobe was placed over her shoulders, plaintiffs allege that Ms. Naranjo's breasts, stomach, and pubic area were fully exposed. (*Id*. ¶ 37.) Further, Officer Defendants allegedly forced Ms. Naranjo to stand exposed in her front yard for approximately 20 minutes before she was brought back into the house and allowed to get dressed. (*Id*. ¶¶ 39-40.)[12]

---

[11] Contrary to County Defendants' assertions, *Franklin* did not "center[] around" that plaintiff's "virtual physical incapacitation." (Reply at 5.) Although the plaintiff's disability was one relevant factor in the *Franklin* court's reasonableness analysis, the court also emphasized that it could "conceive of *no* reason why [the plaintiff] was not given clothing or covering before he was carried from his bed to the living room, so that his genitals would not be exposed to the view of 23 armed strangers." 31 F.3d at 877 (emphasis in original). Moreover, although none of the plaintiffs in this case is alleged to have been disabled, three of the plaintiffs were minors ages six, ten, and fifteen, whose detention "raise[s] additional concerns." *Id*. at 876. The Court finds *Franklin* sufficiently analogous to this case for purposes of the qualified immunity analysis.

[12] County Defendants did not move separately on the issue of whether qualified immunity applies to County Defendants' alleged specific conduct towards the minor children, and thus, the Court focuses its qualified immunity analysis on the allegations regarding Ms. Naranjo. The Court notes, however, that it is not aware of any case law stating that detaining minors in a cold location or refusing to allow a ten-year-old and six-year-old to use the bathroom upon being awaken for approximately 30 minutes violates clearly established law. Should plaintiffs amend the complaint, the theory with respect to the minors should be better articulated.

Based thereon, the Court finds that the complaint alleges a plausible violation of a "clearly established" constitutional right, and as such, plaintiffs' Fourth Amendment claim is not barred by qualified immunity. Separately, however, the Court notes that plaintiffs' Fourteenth Amendment claim is entirely duplicative of their Fourth Amendment claim. Because the Court finds that the Fourth Amendment claim survives, plaintiffs' Fourteenth Amendment claim is dismissed as duplicative. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against [unreasonable seizures], that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.").

### C. *Monell* Claim

Finally, County Defendants argue that the *Monell* claim should be dismissed because plaintiffs have not pleaded sufficient facts to support this theory of liability. (Motion at 6.)[13]

A municipality may be liable under section 1983 when the enforcement of a municipal policy or custom was the moving force behind the violation of a constitutionally protected right. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 (1978). A public entity cannot, however, be held liable "solely because it employs a tortfeasor." *Id.* at 691. Rather, to establish liability for governmental entities under *Monell*, a plaintiff must prove: "(1) that [s]he possessed a constitutional right of which [s]he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) that the policy is the moving force behind the constitutional violation." *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389-391 (1989) (internal quotation marks omitted)). A *Monell* claim for section 1983 liability may be stated in one of three circumstances: (1) when official policies or established

---

[13] County Defendants aver that "San Mateo County Sheriff's Office is not a separate legal entity from San Mateo County and thus is inappropriately named as such in the [c]omplaint." (Reply at 8, n.2.) However, "San Mateo County Sheriff's Office" is not named as a defendant in this action and is only referenced in the complaint to describe the capacity in which special agents Clements and Leishman and Sheriff Bolanos worked. Accordingly, any amended complaint may, but is not required to, clarify this point.

customs inflict a constitutional injury; (2) when omissions or failures to act amount to a local government policy of "deliberate indifference" to constitutional rights; or (3) when a local government official with final policy-making authority ratifies a subordinate's unconstitutional conduct. *Clouthier v. County of Contra Costa,* 591 F.3d 1232, 1249-50 (9th Cir. 2010), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016).

Further, to survive the motion to dismiss stage, a section 1983 claim against a municipality "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and those facts must "plausibly suggest an entitlement to relief." *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). In *AE ex rel. Hernandez*, the Ninth Circuit affirmed dismissal of a *Monell* claim brought by a nine-year-old boy alleging that defendants followed county "ordinances, regulations, customs, and practices" when they failed to prevent plaintiff's foster brother from sexually assaulting him. *Id.* at 635-67. Specifically, the plaintiff alleged that the municipality "maintained or permitted an official policy, custom, or practice of knowingly permitting the occurrence of the type of wrongs" stated in the amended complaint. *Id.* The court concluded that the plaintiff failed to provide any facts regarding the specific "policy, custom, or practice" at issue, and thus, failed to state a claim for *Monell* liability. *Id.* Additionally, the factual allegations must be more than a "formulaic recitation of a cause of action's elements." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Twombly*, 550 U.S. at 555).

Here, plaintiffs baldly allege that the County and Sheriff Bolanos "engage[d] in or tolerate[d] unreasonable and [] unconstitutional searches and seizures," and "fail[ed] to institute and require proper and adequate training, supervision, [and] policies" related to searches and seizures. (Compl. ¶ 55.) Plaintiffs further allege that the County and Sheriff Bolanos "failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline" special agents Leishman, Clements, and Meiers. (*Id.* ¶ 59.)[14] These allegations, and the complaint

---

[14] In their complaint, plaintiffs also allege that special agents Clements and Leishman's conduct was undertaken pursuant to "customs, policies, practices, and/or procedures of the San

12

generally, lack sufficient specificity to support plaintiffs' *Monell* claim. The complaint only makes a vague reference to the County's policies regarding "searches and seizures."[15]

Plaintiffs' opposition only confirms the conclusory nature of the allegations related to the *Monell* claim. Rather than point to any factual allegations in the complaint that would support the claim, plaintiffs merely argue they have adequately alleged that "there was an inadequate training of the officers in the execution of searches and seizures," "because of the inadequate training, Ms. Naranjo's right to be free of unreasonable searches and seizures was deprived, and "the inadequate training in the execution of searches and seizures was the primary force behind the violation." (Opp. at 10.) Although plaintiffs are not required to identify the particulars of any specific policy at this juncture, plaintiffs' allegations must "give fair notice and . . . enable the [County and Sheriff Bolanos] to defend [themselves] effectively." *AE ex rel. Hernandez*, 666 F.3d at 637. Plaintiffs have failed to do so, and thus, the *Monell* claim as asserted against County Defendants is subject to dismissal. Because amendment would not necessarily be futile, however, plaintiffs' *Monell* claim is dismissed with leave to amend.

---

Mateo County Sheriff's Department." (Compl. ¶ 55.) The Court notes that the analysis of an unconstitutional "policy" as opposed to an unconstitutional "custom" or "practice" differs under *Monell*. With respect to an adopted municipal policy, a single incident can serve as the basis of a *Monell* claim so long as "proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985). With respect to customs and practices, liability may not be premised on an isolated incident. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out that policy."); *Thompson v. City of L.A.*, 885 F.2d 1439, 1443–44 (9th Cir. 1989) ("Consistent with the commonly understood meaning of custom, proof of random acts or isolated events are insufficient to establish custom."), *overruled on other grounds, Bull v. City & Cty. of S.F.*, 595 F.3d 964 (9th Cir. 2010) (en banc).

As currently pleaded, the complaint asserts liability based on a single incident, and accordingly, plaintiffs have not alleged sufficient facts to support a *Monell* claim based on any "custom" or "practice."

[15] The complaint also fails to identify whether plaintiffs' *Monell* claim is based on (1) the County's official policies or established customs, (2) omissions or failures amounting to deliberate indifference, and/or (3) an official's ratification of a subordinate's conduct. *See Clouthier,* 591 F.3d at 1249-50. Any amended complaint should clarify this point.

## IV. CONCLUSION

For the foregoing reasons, County Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Court **ORDERS** as follows: (1) County Defendants' motion is **DENIED** with respect to plaintiffs' Fourth Amendment claim; (2) plaintiffs' Fourteenth Amendment claim is **DISMISSED WITHOUT LEAVE TO AMEND**; (3) plaintiffs' *Monell* claim is **DISMISSED WITH LEAVE TO AMEND**.

Any Second Amended Complaint must be filed within **twenty-one (21) days** of issuance of this Order. Any response thereto is due **fourteen (14) days** after plaintiffs' filing. If a Second Amended Complaint is not filed, defendants shall file an answer within **thirty-five (35) days** of this Order.

This Order terminates Docket Number 11.

**IT IS SO ORDERED.**

Dated: August 15, 2019

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**